# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRE HERRING, | ) |
|                 Petitioner, | ) Civil Action No. 13 – 1172 |
|               v. | ) Magistrate Judge Lisa Pupo Lenihan |
| COMMON PLEAS COURT ALLEG. CO, PA and THE ATTORNEY GENERAL OF THE STATE OF PENNA., | ) |
|                 Respondents. | ) |

## **MEMORANDUM OPINION**

Pending before the Court is a Petition for Writ of Habeas Corpus ("the Petition") filed by Andre Herring ("Petitioner") pursuant to 28 U.S.C. § 2254. Petitioner challenges his judgments of sentence imposed at Allegheny Court of Common Pleas CC Nos. 200813313 and 200900379 for violating the terms of his probation. For the following reasons, the Petition will be denied.

**I.**     **Background**

The relevant facts and procedural history of this case, as summarized by the Respondents in their Answer to the Petition, are as follows:

On June 23, 2008, Petitioner, Andre Herring, was arrested and charged at Criminal Complaint Number ("CC No.") 200813313 with having committed one count of Retail Theft, three counts of Criminal Attempt (Retail Theft – Taking Merchandise), and three counts of Criminal Attempt – Theft by Deception.

1

On February 6, 2009, at CC No. 200900379, Petitioner was charged with two counts of Possession of Controlled Substance with Intent to Deliver, and one count of Possession of Controlled Substance.

On April 14, 2010, Petitioner appeared before the Honorable Lester G. Nauhaus to enter a guilty plea at CC Nos. 200813313 and 200900379.

As part of the plea agreement between Petitioner and the Commonwealth, at CC No. 200813313, Counts 1 and 3-7 were withdrawn and Petitioner pled guilty at Count 2, Criminal Attempt. At CC No. 200900379, Counts 2 and 3 were withdrawn and Petitioner pled guilty to Count 1, Possession with Intent to Deliver.

On the same day of the guilty pleas (April 14, 2010), the trial court sentenced Petitioner at CC No. 200900379 to eighteen (18) months intermediate punishment, to be followed by 12 months of probation. The court ordered Petitioner's sentence to commence immediately, and to include electronic monitoring and random urine testing. The court ordered Petitioner to complete all treatment recommended by the Drug Court treatment team and to attend a drug treatment program.

At CC No. 200813313, the court sentenced Petitioner to serve twelve (12) months of probation at Count two to be served concurrently with the probation imposed at CC No. 200900379.

On January 26, 2012, Petitioner, represented by Attorney Sumner Parker of the Allegheny County Public Defender's Office, appeared before the trial court for a probation violation hearing at CC Nos. 200813313 and 200900379. Finding that Petitioner violated probation set by the court on April 14, 2010, the court sentenced Petitioner at CC No. 200900379 at Count 1 to a term of probation of 3 years, and during the first 18 months of which Petitioner

would be subject to random urine testing. The court reiterated that if Petitioner violated the terms of his probation, he would go to prison, and that a sentence of 5 to 10 years would be imposed. Petitioner indicated he understood. The court did not impose a sentence at CC No. 200813313.

On April 24, 2013, Petitioner, represented by Attorney Lawrence Kustra, appeared before the trial court again for a probation violation hearing at CC No. 200900379. Attorney Kustra stated he had reviewed a pre-sentence report with Petitioner. Petitioner's Probation Officer, Mr. Rose, testified that Petitioner had a poor attitude and behavior issues while on probation. The court reiterated that it had informed Petitioner if he violated the terms of his probation he would be sent to a state correctional institution. The court accordingly imposed a sentence of 4 to 8 years of incarceration, with credit for all time to which he was entitled.

On May 22, 2013, Petitioner, through Attorney Veronica Brestensky, filed a Notice of Appeal to the Pennsylvania Superior Court, docketed at 871 WDA 2013, challenging the court's sentence imposed on April 24, 2013 at CC No. 200900379.

On August 14, 2013, while his state court appeal was pending at docket number 871 WDA 2013, Petitioner filed the Petition at the above-captioned number. The case was stayed pending the conclusion of Petitioner's state court proceedings.

On September 18, 2013, Petitioner appeared before the trial court on a motion for time credit at CC No. 200900379. The Petitioner was represented by Attorney Charles Pass, and the Commonwealth was represented by Assistant District Attorney Leann Shipley. At the conclusion of the motion's hearing, the court requested Petitioner's counsel to prepare an order with the time credit being requested and then stated it would sign the order once received.

On October 31, 2013, the Commonwealth, through Assistant District Attorney Amy E. Constantine, filed a Brief for Appellee to the Pennsylvania Superior Court, in response to Petitioner's appeal. The Commonwealth stated in its brief that (1) appellant's claim of entitlement to sentencing credit was moot, since the trial court awarded Appellant all of the sentencing credit he claimed he was owed, and (2) the trial court properly imposed a sentence of total confinement upon Appellant following his second probation violation. On January 26, 2014, the Pennsylvania Superior Court issued a Memorandum Opinion affirming Petitioner's judgment of sentence.

On February 3, 2014, Petitioner filed a motion with this Court to reopen his case. The motion was granted on February 19, 2014, and Respondents' answered the Petition on April 16, 2014.

## II.   **Standards of Habeas Review**

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. *See* 28 U.S.C. § 2254(d) and (e). In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the State court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where the State court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05. The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000) (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999) (*en banc*)). Moreover, the "unreasonable application" test is an objective one; "a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Jacobs v. Horn, 392 F.3d 92, 100 (3d Cir. 2005) (citation omitted). It is Petitioner's burden to prove the State court decision is either contrary to or an unreasonable application of clearly established federal law. *See* Matteo, 171 F.3d at 888; Werts, 228 F.3d at 197.

AEDPA also permits federal habeas relief where the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or unreasonable given that evidence. If the state court's decision based on such a determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is warranted. Within this overarching standard, of course, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the

5

ultimate decision. Here, section 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence.

## III. Discussion

### A. Time Credit

Petitioner first claims that he is entitled to over 44 months of time credit pursuant to 42 Pa.C.S. § 9760(1). Although he does not indicate the dates for which he believes he is entitled to time credit, Respondents assume that he is referring to the same time credit he pursued on appeal in state court at 871 WDA 2013, which is from December 4, 2008 to April 14, 2010; December 2, 2010 to January 27, 2011; and November 22-30, 2012.

While Petitioner raised this issue on direct appeal from his judgment of sentence, it became moot before the Superior Court issued its memorandum opinion. Specifically, on September 18, 2013, while Petitioner's direct appeal was still pending, the trial court held a hearing on a time credit motion submitted by Petitioner, through Attorney Charles Pass, and granted Petitioner additional credit for time served. As a result, Petitioner was awarded time credit for the following periods: December 4, 2008 through April 14, 2010 (497 days); December 2, 2010 through January 27, 2011 (57 days); and November 22 through November 30, 2012 (9 days). In its memorandum opinion, the Superior Court found that, even though Petitioner's motion for time credit was filed after he had filed his appeal, the trial court retained jurisdiction to correct the patent error relating to Petitioner's illegal sentence and thus concluded that the trial court's order granting Petitioner time credit was valid.

Respondents advise that they have notified the Department of Corrections of Petitioner's time credit and that his credit will be adjusted accordingly. Thus, this issue is moot.

### B. Trial Court Error

In his second claim, Petitioner maintains that the trial court erred when (1) after a technical violation, it sentenced him to a term of 3 years of probation on January 26, 2012, when he only had 10 months of probation remaining on his 1 year probation sentence originally imposed on April 14, 2010; and (2) after another technical violation, it sentenced him, to a term of 4 to 8 years of incarceration on April 24, 2013, without stating adequate reasons on the record for the sentence.

Petitioner is incorrect in his first assertion of trial court error. The trial court was limited only by the maximum sentence that it could have imposed originally at the time of the initial sentencing. *See* 42 Pa.C.S.A. § 9771(b) (stating that the sentencing options available to the court after a violation of probation are the "same as were available at the time of initial sentencing"). In this case, the trial court's sentence of one year probation was well below the maximum sentence it could have imposed, 5 to 10 years of incarceration. Therefore, this claim is meritless.

Petitioner's next assertion of trial court error involves his sentence for his second probation violation imposed on April 24, 2013, 4 to 8 years of incarceration. On direct appeal from his judgment of sentence, Petitioner argued that the trial court abused its discretion in imposing an excessive sentence, specifically 4 to 8 years' incarceration for a technical probation violation (i.e., failed urine test), and he also argued that the trial court failed to adequately articulate its reasons for sentencing him to incarceration and consider the factors outlined in 42 Pa.C.S.A. §§ 9725 and 9771(c),[1] except that the court was following through on its promise

---

[1] 42 Pa.C.S.A. § 9771 requires that, before a court can issue a sentence of total confinement upon revocation of probation, the court must find that (1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the

made at the time of imposition of the January 26, 2012 sentence of probation to send Petitioner to state prison if he violated said probation. With regard to these claims, the Superior Court found as follows:

> Although the trial court did not use the exact phrasing of Section 9771(c)(3), the record reflects that the trial court found that such a sentence was essential to vindicate the authority of the trial court. The trial court engaged in an extended colloquy with Appellant regarding the trial court's warning at Appellant's previous Gagnon II hearing that even one dirty urine test would result in incarceration.
>
> Appellant himself chose to be subject to an extended period of probation instead of remaining in a drug treatment program. As the trial court noted, Appellant's decision to leave a drug treatment program and less than three months later test positive for a controlled substance evidenced that it was likely that Appellant would commit another crime if he were permitted to stay on probation.
>
> We find no abuse of discretion in the trial court's determination. At the previous Gagnon II hearing, the trial court explicitly stated that a violation of the terms of probation would result in incarceration. Thus, the trial court reasonably found that incarceration was necessary in order to vindicate its earlier warning to Appellant. Furthermore, the short timespan it took for Appellant to test positive for a controlled substance evidenced a likelihood to commit another crime if he were not incarcerated.
>
> * * *
>
> The trial court recognized that Appellant had a drug problem and that he had used drugs again only three months after being released from prison. The trial court found that there "wasn't any recovery." The record also reflects that the trial court had an in-depth understanding of Appellant's situation and considered the character of Appellant. For example, the trial court responded to the Appellant by reminding him that in addition to his dirty urine sample that he provided while on probation, he had an attitude problem when dealing with the probation office. The trial court also demonstrated its thorough familiarity with Appellant's offense during a discussion about subsequent procedural history of this case. Appellant's own statements at the Gagnon II hearing are evidence that

---

court. Similarly, 42 Pa.C.S.A. § 9725 requires a court to impose a sentence of total confinement if it is of the opinion that it is necessary because (1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime; (2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or (3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

8

> the trial court considered the need to rehabilitate Appellant. For example, the Appellant noted "you told me to get it together."
>
> Finally, "[w]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighted those considerations along with mitigating statutory factors." In the case at bar, the trial court had access to a pre-sentence investigation report. The trial court also ensured that appellant and his counsel had reviewed the pre-sentence investigation report and allowed Appellant the chance to make any corrections and to explain anything that he would have said if a pre-sentence interview had been conducted.
>
> In sum, the trial court's explanation of Appellant's sentence is not a model of clarity; however, we conclude that the explanation was sufficient to show that the trial court considered the factors required by statute and by prior appellate decisions. We conclude that the trial court did not abuse its discretion in sentencing Appellant to 4 to 8 years' incarceration.

(ECF No. 33-5 at pp.14-17.)

This Court will construe the Superior Court's conclusion that the trial court did not abuse its discretion in sentencing Petitioner to 4 to 8 years' incarceration to be a finding that Petitioner's sentence was neither arbitrary nor capricious in violation of the Fourteenth Amendment nor did it constitute cruel and unusual punishment in violation of the Eighth Amendment. Construed as such, this Court finds that the Superior Court's adjudication was neither contrary to nor an unreasonable application of Supreme Court precedent. Therefore, Petitioner is not entitled to habeas relief on this claim.

Finally, to the extent Petitioner challenges any of his sentences as either excessive, grossly disproportionate to the violations committed, or on the basis that the trial court abused its discretion, such claims are generally considered a matter of state criminal procedure which do not fall within the purview of federal habeas review. *See*, *e.g.*, Wilson v. Briley, 243 F.3d 325 (7th Cir. 2001); Williams v. Borg, 139 F.3d 737, 740 (9th Cir. 1998) (federal habeas relief is available "only for a constitutional violation, not for abuse of discretion"); Yarbrough v.

Klopotoski, No. 09-0336, 2009 WL 4810553, at *28 (E.D. Pa. Dec. 8, 2009) (rejecting a claim that the sentence was manifestly excessive, the court held "This claim alleges only a violation of Pennsylvania law, and not a violation of the federal Constitution . . . . Thus, this claim is not cognizable in a federal habeas proceeding."), *report adopted by*, 2009 WL 4673862 (E.D. Pa. Dec. 8, 2009). Unless a habeas petitioner establishes that a state sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality of a sentence is purely a question of state law that a federal court has no power to review in a habeas corpus proceeding. *See* Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir. 1984); U.S. ex rel. Jackson v. Myers, 374 F.2d 707, 711 n.11 (3d Cir. 1967) (the severity of a defendant's sentence alone does not constitute grounds for federal habeas relief); Knight v. Beyer, 1989 WL 68618, at *6 (E.D. Pa. June 22, 1989) ("[a]bsent some constitutional violation, it is clear that, particularly in the area of state sentencing guidelines, federal courts cannot review a state's alleged failure to adhere to its own sentencing procedure"). Thus, Petitioner's claims arising out of the state court's sentencing decision are not constitutionally cognizable unless he can show that his sentence violates the Eighth or Fourteenth Amendments.

A review of Petitioner's appellate brief, however, reveals that he did not raise, in any manner, an Eighth or Fourteenth Amendment claim before the state Superior Court on direct appeal. *See*, *e.g.*, McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (explaining methods by which a state prisoner could alert state courts to a federal constitutional claim). Hence, any federal constitutional issue with respect to his sentence has been waived and, because any such constitutional claim cannot now be presented to the state courts, such claims are now procedurally defaulted. *See* FN 2 & 3. Alternatively, even if his sentencing claims could be

construed to have raised federal constitutional issues, Petitioner has not carried his burden to show entitlement to federal habeas relief.[2]

### C. Ineffective Assistance of Counsel

In his third claim, Petitioner maintains that Attorney Parker, who represented him at his January 26, 2012 violation hearing, failed to address the trial court's error of imposing a sentence that was in violation of the initial plea agreement entered into on April 14, 2010. Additionally, Petitioner maintains that Attorney Kustra provided ineffective assistance when he failed to speak at the April 24, 2013 probation violation hearing until the end of the hearing.

As an initial matter, the Court finds these claims of ineffectiveness to be unexhausted because Petitioner did not raise them in state court. Moreover, any attempt to return to state court and raise them now would be futile because they would be time-barred.[3] Therefore, the claims are also procedurally defaulted and cannot now provide Petitioner relief absent a showing of cause and prejudice or a miscarriage of justice. *See* O'Sullivan v. Boerckel, 526 U.S. 838,

---

[2] Petitioner originally faced a maximum sentence of 10 years when he pled guilty on April 14, 2010. He was given two chances before the trial court determined that he should be incarcerated. Once Petitioner violated the terms of his probation, the trial court was no longer obligated to abide by the terms of the original agreed upon sentence imposed on April 14, 2010 or the sentence imposed on January 26, 2012. After Petitioner's probation was revoked, the sentencing alternatives available to the court were "the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S.A. § 9771(b). Petitioner has failed to demonstrate that the 4 to 8 year sentence imposed by the trial court was outside of the lawful maximum or cruel and unusual punishment.

[3] If Petitioner wished to raise these claims he would have to return to state court and file a PCRA petition, but a PCRA petition would be time-barred by the statute of limitations contained in the current version of the statute. *See* 42 Pa. C.S. § 9545(b) (setting a one-year jurisdictional statute of limitations for PCRA actions). Petitioner's judgment of sentence became final on February 25, 2014, thirty days after the Pennsylvania Superior Court affirmed on January 24, 2014. If Petitioner wanted to file a PCRA petition in state court then he would have had to do so by February 25, 2015.

845 (1999); Coleman v. Thompson, 501 U.S. 722, 751 (1991). Petitioner, however, has not carried his burden to establish either.[4]

Nevertheless, even if the Court were to review the claims *de novo*, they still would not provide Petitioner with the relief he seeks. To have been entitled to relief, Petitioner would have to show that his attorney's representation fell below an objective standard of reasonableness, and there exists a reasonable probability that, but for counsel's error, the result would have been different. See Strickland v. Washington, 466 U.S. 668 (1984).[5] First, as to his claim against Attorney Parker, whom he claims failed to object to the court's sentence imposed on January 26, 2012, Petitioner has not shown that there was a valid basis on which to object to the sentence. On this day, Petitioner was resentenced to three years of probation for violating the terms of his

---

[4] To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494. Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. This exception to the procedural default doctrine is based on the principle that, in certain circumstances, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" Carrier, 477 U.S. at 495 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)).

[5] For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. With respect to the sequence of the two prongs, the Strickland Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. at 697.

original probation imposed on April 14, 2010. Petitioner claims that the trial court's sentence violated the terms of his original plea agreement, but his allegations with respect to this claim are unclear. He notes that as part of his sentence imposed on April 14, 2010, he was ordered "to complete all treatment recommended by the Drug Court treatment team," and "to participate in the criminality group." This is indeed reflected in the transcript of the sentencing hearing held on April 14, 2010. However, Petitioner complains that the judge then contradicted himself when, on January 26, 2012, in response to a question about the criminality program, he stated that he never directed that Petitioner be put into that program. This alleged contradiction by the judge somehow forms the basis of Petitioner's claim that the court violated the terms of his original plea agreement. He also complains that he never violated the terms of his probation because he did not "abscond" from the drug treatment facility.[6]

To the extent Petitioner complains that counsel should have objected to the judge's apparent contradiction because somehow that relieved him of that portion of his original sentence that required him to complete the criminality program, and therefore he did not technically violate the terms of his probation by not returning to the drug treatment facility, Petitioner's claim is nonsensical. First, there was never any contradiction by the judge. As part of Petitioner's sentence he directed that Petitioner "participate" in the criminality program, but he did not "put" him into the program or "direct" that he be put into the program because placement in such a program is not typically a function of the court. Furthermore, regardless of his reason for not returning to the drug treatment facility, the simple fact remains that Petitioner

---

[6] Petitioner states that he did not escape from the drug treatment facility. Instead, he states that he did not return to the facility on time because he got "pulled over" when on his way back from a home pass. However, elsewhere in the record it is implied that he did not return to the program out of frustration because his Probation Officer would not put him into the criminality program and he was already done with the drug treatment aspect of his sentence.

violated the terms of his probation by not returning. Thus, there was no violation of his plea agreement and no reason for Attorney Parker to object. Moreover, Petitioner essentially got to choose the sentence he received for the violation. The judge offered Petitioner the alternative of remaining in the Drug Court Program over receiving additional probation and Petitioner chose the probation. Petitioner has simply not demonstrated deficient performance on the part of Attorney Parker or shown that the outcome of his probation violation hearing would have been different had Attorney Parker objected to the sentence. Therefore, this claim is meritless.

As to his claim against Attorney Kustra, whom Petitioner maintains was ineffective for not speaking until the end of his violation of probation hearing held on April 24, 2013, Petitioner has (1) not specified what he believes Attorney Kustra should have said during the hearing, and (2) not shown how the outcome of his hearing would have been different had Attorney Kustra spoken earlier. The transcript of this hearing reveals that it was very short, that the judge was familiar with Petitioner and his situation, and that the court was intent on imposing a sentence of incarceration since Petitioner had been warned that is what he would receive if he violated his probation again. Therefore, besides being deficient, Petitioner's claim is without merit.

## IV.    **Certificate of Appealability**

Section 102 of the AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court will not grant a certificate of appealability. A separate Order will issue.

Dated:  July 20, 2015.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Andre Herring
LA2238
SCI Somerset
1600 Walters Mill Road
Somerset, PA 15510